UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHARON LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-CV-0295-CVE-FHM |
| | ) |
| BROADSPIRE SERVICES, INC., a foreign | ) |
| corporation; KEMPER NATIONAL | ) |
| SERVICES, INC., a foreign corporation; and | ) |
| AMERICAN ELECTRIC POWER SYSTEM | ) |
| LONG TERM DISABILITY PLAN, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff filed this action seeking to recover benefits and enforce her rights under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. ("ERISA"). Plaintiff challenges as arbitrary and capricious the decision of Broadspire Services, Inc ("Broadspire")[1] to deny long-term disability ("LTD") benefits.

**I.**

Plaintiff Sharon Lewis was hired as an employee of American Electric Power Service Corporation ("AEP") on September 18, 1991. She worked as a customer service representative, and her primary job duties included answering phones, talking to customers, and data entry. This was a sedentary job, requiring plaintiff to work approximately eight hours every day answering the telephone and using a computer. As an AEP employee, Lewis was eligible to participate in AEP's

---

[1] The plan administrator was originally organized under the name Kemper National Services, Inc., but later changed its name to Broadspire Services, Inc. For ease of reference, the Court will refer to all three defendants as "Broadspire."

LTD plan. Plaintiff claims that she suffered from various medical conditions and took extended periods of medical leave. On September 19, 2001, Lewis filed a claim for LTD benefits stating that she suffered from depression, anxiety and fatigue. She stated her job was stressful and was impeding her complete recovery from depression.

On November 9, 2001, Broadspire denied plaintiff's application for LTD benefits, because she did not qualify as disabled under the definition provided under the disability plan. Broadspire requested medical records from four of plaintiff's treating physicians, but only one of them complied with Broadspire's request for medical records. Plaintiff submitted to an independent medical examination by Andrew John, M.D., but he did not find any indications of physical or mental illness that would prevent plaintiff from performing her necessary job duties. Broadspire stated that it did not have sufficient objective medical evidence to grant plaintiff's request for LTD benefits.

The LTD plan is funded by AEP, but administered by Broadspire. The LTD plan provides the following definition of "disability":

> You must meet the Plan's definition of disability to receive LTD benefits. If you are unable to perform the duties of **your** job, you are eligible for benefits for up to 24 months from the date of your disability. Then, if you are unable to perform the duties of **any** job for which you are reasonably qualified due to education, training and experience, you may receive benefits up to the maximum benefit period.

Dkt. # 24, Ex. A, at 158. In order to initially qualify for benefits, Broadspire had to find that plaintiff was disabled under an "own occupation" standard. After 24 months, LTD benefits could continue if plaintiff was disabled under an "any occupation" standard. LTD benefits terminate upon the occurrence of the earliest of the following events:

- ■ The date you are no longer disabled

- ■ The date you die

- ■ The date you are earning at least 60% of pre-disability earnings or an amount equal to your gross monthly benefit

- ■ The date you refuse to receive medical treatment that is generally acknowledged by physicians to cure or improve your condition to an extent that you could return to gainful employment

- ■ The date you fail to provide written, satisfactory proof of disability

Id. at 161.  The plan administrator retains "the rights to carry out responsibilities and use maximum discretionary authority permitted by law."  Id. at 31.  The rights reserved to the plan administrator include the right to:

- ■ Interpret, construe and administer the plans,

- ■ Make determinations regarding plan participation, enrollment and eligibility for benefits,

- ■ Evaluate and determine the validity of benefit claims, and

- ■ Resolve any and all claims and disputes regarding the rights and entitlements of individuals to participate in the plans and to receive benefits and payments pursuant to the plans.

Id.

Plaintiff appealed Broadspire's decision, and Broadspire requested additional medical records when considering the appeal.  Barry Glassman, M.D., performed a psychiatry examination of plaintiff and concluded that plaintiff was disabled based on an "own occupation" standard.  On January 31, 2002, Broadspire approved plaintiff's request for LTD benefits.  In June 2002,

Broadspire sent a field case manager ("FCM") to interview plaintiff,[2] as part of the ongoing investigation to determine if plaintiff still qualified as disabled under the plan. The FCM found that plaintiff was disabled and was not capable of working at her former occupation. He did state that a follow-up interview in six months to a year would be appropriate, because plaintiff could be capable of pursuing some type of employment. Broadspire subsequently advised plaintiff that she would be entitled to benefits under an "own occupation" standard until April 17, 2003. At that time, plaintiff would be responsible for providing additional medical evidence to support continued LTD benefits under an "any occupation" standard.

Between June 2002 and April 2003, plaintiff was evaluated by several physicians. Plaintiff's treating physician, Stanley N. Schwartz, M.D., examined plaintiff on November 14, 2002 and stated that plaintiff had a class 5 physical limitation, meaning that plaintiff was incapable of sedentary work. At Broadspire's request, Lawrence Burstein, Ph.D., conducted a psychological examination of plaintiff and concluded that plaintiff's psychological condition did not preclude her from performing any occupation. He reviewed plaintiff's medical records provided by her treating physicians and other medical records related to plaintiff's physical condition. Russell Superfine, M.D., an internal medicine specialist, examined plaintiff regarding her complaints of fibromyalgia, sleep apnea, and alleged chemical sensitivities. After reviewing medical records from plaintiff's treating physicians and assessments provided by Broadspire, Dr. Superfine found that available medical records did not establish that plaintiff had a functional impairment preventing her from working. Broadspire requested an IME from a clinical psychologist, Edgar J. Kranau, Ph.D, and his

---

[2]  An FCM is not a physician and does not make a medical diagnosis. The FCM functions as a case manager who gathers information to assess whether plaintiff is still entitled to receive LTD benefits.

4

findings supported plaintiff's claim that she could not perform any occupation. Based on the medical evidence, Broadspire concluded that plaintiff could not perform any occupation, and extended her LTD benefits.

On October 16, 2003, Broadspire notified plaintiff that she needed to submit updated medical records to support her claim for LTD benefits, specifically including any medical records dated after February 1, 2003. Elana Mendelssohn, Psy.D. conducted a comprehensive peer review on December 17, 2003 and, based on the plaintiff's medical records from 2003, opined that plaintiff was not disabled under an "any occupation" standard. She stated that:

> [w]hile the claimant may experience emotional difficulties, the submitted documentation fails to describe a severity and intensity of psychiatric symptoms in objective mental status terms to preclude work. Likewise, although the claimant reports cognitive difficulties, there is no objective data substantiating the presence of impairments in cognition. Therefore, the submitted documentation does not support disability from performing useful work.

Admin Rec. at 363. Broadspire also requested that an internal medicine specialist perform a comprehensive peer review. Wendy Weinstein, M.D., found that, based on a functional capacity evaluation, plaintiff could perform a sedentary job. Dr. Weinstein did not find any objective medical evidence that would support plaintiff's claim that fibromyalgia prevented her from working. She also noted that plaintiff could perform daily household chores.

Broadspire formally reevaluated plaintiff's claim on January 14, 2004, and conducted an employability assessment report. The information provided for this review included: (1) medical reports from plaintiff's treating physicians, William Rea, M.D., and Sheri Reinhard, M.D.; (2) a functional capacity evaluation dated January 2, 2003; (3) a resource questionnaire completed by plaintiff on November 24, 2003; (4) a job analysis worksheet describing plaintiff's employment history; (5) comprehensive peer reviews from Dr. Mendelssohn and Dr. Weinstein, and (6) a

vocational interview with plaintiff. As a result of the employment assessment, Broadspire concluded that plaintiff could perform several jobs, including customer service representative, receptionist, sales person, and clerk. Broadspire notified plaintiff her benefits would be terminated on March 1, 2004. Plaintiff obtained legal counsel and appealed Broadspire's decision to terminate her LTD benefits.

As part of the appeal process, Broadspire requested comprehensive peer reviews of plaintiff's medical records from specialists in psychiatry, allergy and immunology, and internal medicine. The psychiatry peer reviewer, Dr. Glassman, opined that plaintiff could return to work, because the medical evidence did not show a psychological impairment of the severity or intensity to prevent her from performing the primary tasks of any occupation. Angelos Koutsonikolis, M.D., the allergy and immunology specialist, determined that the medical records lacked sufficient documentation to support a finding that plaintiff's allergies or chemical sensitivities prevented her from returning to work. The internal medicine peer reviewer also found that there was no objective medical evidence that showed plaintiff could not perform the essential duties of any occupation. On August 20, 2004, Broadspire denied plaintiff's appeal based on the lack of medical records showing a physical or psychological impairment to support a finding that plaintiff could not perform any occupation.

Under the plan, plaintiff had a right to appeal the denial and she requested additional time to evaluate the peer reviews Broadspire relied upon to deny her initial appeal. The final appeal was referred to the AEP Service Corporation LTD Plan Claims Appeal Committee. However, AEP and Broadspire had previously entered a service agreement establishing that Broadspire would handle final appeals, and the appeal was referred back to Broadspire. See infra note 3. Plaintiff's counsel, Beverly Stewart, submitted written argument detailing the evidence supporting plaintiff's claim for

benefits. Broadspire requested four new peer reviews for the final appeal, specifically in the areas of allergy and immunology, rehabilitation, internal medicine, and psychology. The reviewer in each area concluded that plaintiff could perform a sedentary occupation. The Broadspire appeal committee upheld the denial of benefits on February 18, 2005, and informed plaintiff of her right to appeal the plan administrator's decision under ERISA.

## II.

As a preliminary matter the Court must determine the proper standard of review for plaintiff's ERISA claim. As a plan beneficiary, plaintiff has the right to federal court review of benefit denials and terminations under ERISA. "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). Specifically, 29 U.S.C. § 1132(a)(1)(b) grants plaintiff the right "to recover benefits due to [her] under the terms of the plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." The default standard of review is de novo. However, when a plan gives the claims administrator discretionary authority to determine eligibility for benefits or to construe the terms of a plan, a challenge under section 1132(a)(1)(B) is to be reviewed under an arbitrary and capricious standard. See Firestone, 489 U.S. at 115 (courts must apply the appropriate standard "regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.").

Under the two-tier "sliding scale" approach adopted by the Tenth Circuit, a "reduction in deference is appropriate" where there is an inherent or proven conflict of interest. Fought v. Unum Life Ins. Co. of America, 379 F.3d 997, 1006 (10th Cir. 2004). If plaintiff shows a conflict of interest, deference to the administrator's decision is reduced and the burden shifts to the plan administrator to prove "that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." Id.

In a conflict of interest situation, the determinative inquiry is whether the administrator's decision was supported by substantial evidence. "'Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker].' Substantial evidence requires 'more than a scintilla but less than a preponderance.'" Sandoval v. Aetna Life & Cas. Inc. Co., 967 F.2d 377, 382 (10th Cir. 1992) (citations omitted). "The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." Allison v. Unum Life Ins. Co. of America, 381 F.3d 1015, 1022 (10th Cir. 2004). The Court considers the record as a whole, but it considers only that information available to the plan administrator at the time the decision was made. Hall v. Unum Life Ins. Co. of America, 300 F.3d 1197, 1201 (10th Cir. 2002); Chambers v. Family Health Plan Corp., 100 F.3d 818, 823 (10th Cir. 1996) ("The reviewing court may consider only the evidence that the administrators themselves considered."). The Court must "take into account whatever in the record fairly detracts from the weight of the evidence in support of the administrator's decision." Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994) (internal citations and quotation marks omitted). The Court gives less deference to an

8

administrator's conclusions if the administrator fails to gather or examine relevant evidence. See Caldwell v. Life Ins. Co. of N. America, 287 F.3d 1276, 1282 (10th Cir. 2002). Yet, the Court "will not set aside a benefit decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith." Trujillo v. Cyprus Amax Minerals Co., Ret. Plan Comm., 203 F.3d 733, 736 (10th Cir. 2000).

The proper standard of review in this case is the "arbitrary and capricious" standard discussed by the Tenth Circuit in Fought. Neither party disputes that the plan gives Broadspire discretionary authority to interpret and administer the plan.[3] However, plaintiff argues that Broadspire's decision must be reviewed under a less deferential standard because the final appeal was a sham, constituting a serious procedural irregularity. Under Fought, "when a serious procedural irregularity exists, and the plan administrator has denied coverage, an additional reduction in deference is appropriate." 379 F.3d at 1006. Plaintiff asserts three arguments to show that the final appeal contained serious procedural irregularities: (1) AEP violated the plan by referring the final appeal to Broadspire; (2) the Broadspire appeal committee reviewed only a two-page appeal summary when making its decision; and (3) the Broadspire appeal committee relied on evidence that was never presented to plaintiff.

After reviewing plaintiff's arguments, the Court finds that the plan administrator's decision is not subject to a less deferential standard of review because of a procedural irregularity. Although the plan adopted new procedures after plaintiff initially filed a claim, the service agreement between

---

[3] The service agreement between AEP and Broadspire states that AEP "hereby delegates to Broadspire discretionary authority to render initial, first and final level appeal claim determinations, including interpreting the terms of the Plan relating to benefit determinations . . . ." Dkt. # 28, Ex. A, Service Agreement Between Broadspire Services, Inc. and American Electrice Power Service Corporation, at 5.

Broadspire and AEP requires Broadspire to conduct a full review "consistent with the DOL regulations or prevailing law." Dkt. # 28, Ex. A, at 4-5. If plaintiff had been denied benefits based on a change to the plan of which she did not have notice, that would constitute an arbitrary and capricious action by the plan administrator. See Cirulis v. Unum Corp., 321 F.3d 1010, 1016-17 (10th Cir. 2003). However, there is no indication that the new procedure was used as a basis to deny plaintiff benefits, or that plaintiff was prejudiced by the procedures adopted by AEP and Broadspire. In addition, not every procedural change to an ERISA plan is a formal amendment that requires notice to plan participants. Allison v. Bank One-Denver, 289 F.3d 1223, 1233-34 (10th Cir. 2002). Plaintiff has not cited any authority for the proposition that AEP's decision to allow Broadspire to hear appeals of claim denials denied plaintiff a full and fair review of her claim.

Plaintiff argues that the Broadspire appeal committee did not have her entire file before it when considering her appeal, but that the committee relied solely on a two-page appeal summary. The administrative record does not support plaintiff's argument. The plan prepared an appeal summary, but the document relied upon by plaintiff does not state that the appeal committee was instructed to ignore other evidence in the file. The denial letter includes a two-page, single-spaced list of medical records that were before the committee when it made its decision. Admin. Rec. at 736-39. In addition, the administrative record includes a checklist containing eleven categories of information that were provided to the appeal committee. Id. at 741. Plaintiff may argue that the committee reached an arbitrary and capricious decision based on the evidence, but there is no basis for the Court to conclude that the appeal committee was denied access to plaintiff's file when it considered plaintiff's appeal.

Plaintiff claims that she was not given copies of every document provided to the Broadspire appeal committee at the time it denied her final appeal. The appeal summary provided to the committee refers to guidelines from the Medical Disability Advisor ("MDA") that provide a time range for the average length a person may be affected by certain disabilities. However, she has cited no authority for the proposition that the appeal committee was required to provide to plaintiff copies of every document it reviewed when her claim was considered. Plaintiff filed a brief for the final appeal and this was provided to the committee. Even if plaintiff had been informed of the MDA guidelines, her argument to support her claim for disability would have been the same. The appeal committee did not cite the MDA guidelines in its denial, but cited a lack of objective medical evidence supporting a claim for permanent disability under an any occupation standard. If there is no evidence the committee actually relied on the MDA guidelines, there is no risk that plaintiff was harmed by their inclusion with the appeal summary.

The Court does not find that plaintiff has introduced any evidence supporting her claim that a serious procedural irregularity requires the Court to afford less deference to the plan administrator's decision. When applying the arbitrary and capricious standard, the plan administrator's decision will be upheld "so long as it is predicated on a reasoned basis." Adamson v. Unum Life Ins. Co. of America, 455 F.3d 1209, 1212 (10th Cir. 2006). If the Court finds that the plan administrator's decision "resides 'somewhere on a continuum of reasonableness-even if on the low end," the decision must be upheld. Id. (quoting Kimber v. Thiokol Corp., 196 F.3d 1092, 1098 (10th Cir. 1999)).

**III.**

Plaintiff argues that Broadspire lacked substantial evidence to support its denial of her claim for LTD benefits and that Broadspire ignored relevant evidence that clearly showed plaintiff was disabled under an any occupation standard. When reviewing the plan administrator's decision, the Court may consider only the arguments and evidence before the administrator at the time it denied plaintiff's claim for LTD benefits. DeGrado v. Jefferson Pilot Financial Ins. Co., 451 F.3d 1161, 1169 (10th Cir. 2006). Broadspire asserts that its decision to deny benefits is amply justified by the administrative record and that it was not required to provide any additional deference for the evidence of plaintiff's treating physicians.

The administrative records shows that Broadspire attempted to gather and examine relevant evidence and that it fully considered the evidence presented by plaintiff. Plaintiff argues that Broadspire arbitrarily ignored evidence provided by her treating physicians. Broadspire is correct that it did not have to "accord special weight to the opinions of a claimant's physician," nor did it have to state any explanation for accepting reliable medical evidence that conflicts with the statements of plaintiff's treating physicians. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). However, Broadspire could not arbitrarily refuse to consider reliable evidence provided by plaintiff's treating physicians. Fought, 379 F.3d at 1000 n.1; Doyle v. Barnhart, 331 F.3d 758, 762-63 (10th Cir. 2003). Every denial letter includes a list of evidence before the plan administrator, and each time the plan administrator reviewed evidence submitted by plaintiff's treating physicians. When faced with conflicting medical evidence, as in this case, the plan administrator's decision is not arbitrary and capricious simply because it conflicts with the assessment of plaintiff's treating physicians. See Semien v. Life Ins. Co. of North America, 436

F.3d 805, 812 (7th Cir. 2006) ("Although [plaintiff's] treating physicians reached different conclusions as to her abilities, under an arbitrary and capricious review, neither this Court, nor the district court, will attempt to make a determination between competing expert opinions."); Leahy v. Raytheon Co., 315 F.3d 11 (1st Cir. 2002) (existence of conflict between treating physician and independent reviewers insufficient to meet plaintiff's burden under arbitrary and capricious standard of review).

The Court finds that Broadspire's decision to deny plaintiff's claim for LTD benefits is supported by substantial evidence and was not arbitrary or capricious. Broadspire requested new comprehensive peer reviews for each appeal, and each reviewer was supplied with evidence from plaintiff's treating physicians. Dr. Mendelssohn, a psychologist, relied on objective findings by plaintiff's treating physician, Jackie Neel, M.D., to conclude that the record did not contain evidence showing plaintiff suffered from a cognitive impairment that prevented her from working. Admin Rec. at 362-64. Dr. Glassman notes Dr. Neel's disagreement with Broadspire's finding that plaintiff could return to work, and he discusses Dr. Neel's findings in detail. Id. at 690-91. He also considers the objective evidence gathered during a psychological evaluation performed by Minor W. Gordon, Ph.D., but states his disagreement with the conclusions reached by Dr. Gordon. This shows that the peer reviewers did not ignore medical records provided by plaintiff's treating physicians, but simply disagreed with their diagnosis. Broadspire did not have to grant the evidence provided by plaintiff's physicians any additional weight, but could exercise its discretion to reach a different conclusion after considering all of the evidence. The plan administrator was in the best position to make this decision and the Court may not overturn the decision if it was reasonable. See Kimber, 196 F.3d at 1098.

Plaintiff cites deficiencies in the letter denying her claim on August 20, 2004, such as Broadspire's failure to specifically state additional information the plaintiff should submit and allegedly conclusory statements used to support the denial of plaintiff's claim.[4] Plaintiff argues that Broadspire's failure to fully comply with 29 U.S.C. § 1133, the notice provision of ERISA, was a mistake of law, and that this mandates a finding that Broadspire acted arbitrarily and capriciously. See Caldwell, 287 F.3d at 1282; Winchester v. Prudential Life Ins. Co. of America, 975 F.2d 1479, 1483 (10th Cir. 1992). The letter contains a detailed analysis of plaintiff's medical file and it is clear that Broadspire considered plaintiff's entire file when reaching its conclusion. Even if every reviewer did not consider every piece of medical evidence, it is clear that the plan administrator considered the totality of the evidence when it reviewed plaintiff's claim. The Tenth Circuit does not require a district court to reverse a plan administrator's decision based on a procedural defect unless plaintiff can show that she was prejudiced by the error. Sage v. Automation, Inc. Pension Plan & Trust, 845 F.2d 885, 895 (10th Cir. 1988). Although plaintiff points out technical deficiencies with the appeal letter, Broadspire substantially complied with the procedural requirements of the plan and plaintiff has not been deprived of any clearly defined rights under the plan. See Allison, 289 F.2d at 1236-37. The alleged deficiencies with the denial letter or the review process do not constitute a mistake of law.

---

[4] The Court has already considered plaintiff's argument that the plan administrator did not consider her entire file for the final appeal. Broadspire has introduced evidence that the appeal committee had access to the complete record, and there is no basis to conclude the review procedures constituted a mistake of law.

The evidence in the administrative record contains substantial evidence to support Broadspire's denial of plaintiff's claim. In cases where there is conflicting medical evidence and the plan administrator considered all of the evidence, the Court must generally defer to the plan administrator's decision. The evidence shows that plaintiff was successful on appeal following her initial denial of benefits under an "own occupation" standard,[5] and plaintiff has presented no evidence that her subsequent denial under an "any occupation" standard was arbitrary and capricious.

**IT IS THEREFORE ORDERED** that defendant's decision to terminate plaintiff's LTD benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 12th day of October, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] For example, plaintiff criticizes Dr. Glassman's peer review following Broadspire's decision to terminate LTD benefits after March 1, 2004. However, Dr. Glassman had previously found that plaintiff was disabled under an "own occupation" standard. Plaintiff's assertion that Broadspire's reliance on peer reviewers shows a lack of objectivity is not supported by the administrative record.